Alene M. **BUYS**, Appellant/Appellee,

v.

Norbert F. **BUYS**, Appellee/Appellant.

No. 04–93–00302–CV.

Court of Appeals of Texas, San Antonio.

Dec. 14, 1994.

Rehearing Denied March 31, 1995.

Duncan, J., filed dissenting opinion on denial of motion for rehearing.

Leonard J. Gittinger, Jr. and L. John Gittinger, III, Gittinger & Gittinger, San Antonio, for appellant.

Gary A. Beahm, Law Offices of Gary A. Beahm, San Antonio, for appellee.

Before BUTTS, RICKHOFF and HARDBERGER, JJ.

## OPINION

HARDBERGER, Justice.

This case decides in a post-divorce action what benefits a husband (Norbert) receives and what benefits a wife (Alene) receives of:

1. Military Retirement benefits;

2. Civil Service Retirement benefits.

The following dates are significant:

| September 22, 1953 | — | Marriage of Norbert and Alene; |
| January 22, 1970 | — | Divorce of Norbert and Alene; |
| February, 1985 | — | Norbert retires from Civil Service; |
| February 3, 1990 | — | Norbert retires from the Air Force Reserve; |
| July 13, 1990 | — | Suit brought by Alene for retirement benefits from both the Air Force and the Civil Service. |

Of significance is that the Uniformed Services Former Spouses Protection Act and its 1990 amendment holds that there can be no benefit division from military retirement if the divorce happened before 1981, and the benefits were not divided before or at that time. Alene's position is that that divorce decree of 1970 has already partitioned those benefits because of the residuary clause in the decree which says that all community property not specifically mentioned, goes to Alene. There was no specific mention of either the Air Force or the Civil Service retirement benefits. Thus there is a conflict between the Former Spouses Act and the residuary clause of the divorce.

We hold that the Former Spouses Act and its 1990 amendment defeats whatever claim Alene may have under the residuary clause as to any military pension benefits. We also hold that Alene is entitled to her community interest in the Civil Service Retirement benefits.

## Background

Alene M. Buys and Norbert F. Buys were married on September 22, 1953. The parties were divorced on January 22, 1970. The divorce included an Agreement of Property Settlement and Partition of Property which did not expressly address either military or civil service retirement benefits but did contain a residuary clause awarding all community property, not specifically mentioned, to Alene Buys.

At the time of the divorce Norbert Buys was a member of the United States Air Force Reserve serving in the pay grade of E–7 (Master Sergeant). In addition he was working for the United States Civil Service in the pay grade of W–F–7 and had worked for the Civil Service for approximately 14 years. Norbert Buys retired from Civil Service in February of 1985 and from the United States Air Force Reserve on February 3, 1990.

Alene Buys filed an Original Petition on July 13, 1990 to determine and enforce her entitlement in the accrued or vested interests of the parties to both the Civil Service Retirement Annuity and the United States Air Force Retirement. The case was tried to the court which entered judgment that the 1970 Decree of Divorce failed to divide the retirement rights. The court proceeded to divide both the Civil Service Annuity and the United States Air Force Retirement.

The court found that Norbert Buys had accrued two hundred and forty (240) months of active duty service and active reserve service towards retirement in the United States Air Force Reserve. The court also found that two hundred and ten (210) months out of the total were community property. The court awarded Alene Buys one half of the community interest in the military retirement pay which amounts to 43.75% of the total military retirement pay. Alene was also awarded $7,501.41 which represented 43.75% of the total sum of military retirement pay received by Norbert Buys between the date of his retirement and the date of trial.

Concerning the civil service retirement pay, the court found that Norbert Buys had accumulated three hundred and ninety (390) months total service and that two hundred nine and a half (209.5) months out of the total were community property. The court also awarded Alene one half of the community's interest in the civil service retirement pay which equals 23.86% of the total civil service retirement benefits. Alene was awarded $30,890.06 which represents 23.86% of all civil service retirement benefits received by Norbert Buys from the date of retirement through the date of trial. Both parties appealed from the judgment.

### Military Retirement Benefits

Alene Buys argues in her first point of error that the trial court erred in finding that the divorce's Property Settlement Agreement did not divide all of the then accrued or vested rights in both the Civil Service Retirement Annuity and the United States Air Force Retirement. She says it did. Norbert Buys argues in his second cross-point of error [1] that the trial court was without jurisdiction to divide his military retirement pay and award a proportionate share to Alene because the 1970 divorce decree didn't discuss his military retirement and thus any post-

divorce attempt to partition his retirement is preempted by the 1990 amendment to 10 U.S.C. § 1408, the Uniformed Services Former Spouses' Protection Act, (Former Spouses Act). We will consider both points together.

Traditionally, Texas courts considered military retirement and disability benefits community property divisible upon divorce. *Busby v. Busby*, 457 S.W.2d 551 (Tex.1970); *Kirkham v. Kirkham*, 335 S.W.2d 393 (Tex. Civ.App.—San Antonio 1960, no writ). If military benefits were not divided at divorce then the parties jointly owned the retirement benefits as tenants in common and partition was the correct way to divide the benefits. *Harrell v. Harrell*, 692 S.W.2d 876 (Tex. 1985); *Busby*, 457 S.W.2d at 554. However, in *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), the United States Supreme Court prohibited division of military retirement benefits by state courts and further forbid any adjustment in the award of other community property to balance the loss of these benefits.

■ In response to *McCarty*, Congress enacted the Uniformed Services Former Spouses' Protection Act, Pub.L. No. 97–252, 96 Stat. 730 (codified as amended at 10 U.S.C. § 1408(c)(1) (1983)). The purpose of the Former Spouses Act was to reverse the effect of the *McCarty* decision. *Cameron v. Cameron*, 641 S.W.2d 210, 212 (Tex.1982). Under the Former Spouses Act, a court may divide military retirement pay between spouses in accordance with the law of the jurisdiction of that court. The act limits the division of retirement pay to periods beginning after June 25, 1981. 10 U.S.C. § 1408(c)(1).

In 1990, Congress amended the Former Spouses Act to restrict the ability of courts to partition military retirement benefits that were not addressed in a final decree of divorce entered before 1981. The 1990 amend-

---

1. In his first cross-point of error, Norbert Buys complains that the trial court erred because it failed to file findings of fact and conclusions of law. We overrule Norbert's first cross-point of

error as moot. The trial court made and filed findings of fact and conclusions of law on September 10, 1993. Further, Norbert Buys has failed to attack any of the court's findings of fact.

ment to the Former Spouses Act reads as follows:

A court may not treat retired pay as property in any proceeding to divide or partition any amount of retired pay of a member as the property of the member's spouse or former spouse if a final decree of divorce, dissolution, annulment, or legal separation (including a court ordered, ratified, or approved property settlement incident to such decree) affecting the member and the member's spouse or former spouse (A) was issued before June 25, 1981, and (B) did not treat (or reserve jurisdiction to treat) any amount of retired pay of the member as property of the member and the member's spouse or former spouse.

10 U.S.C.A. § 1408(c)(1) (West Supp.1993). The 1990 amendment was enacted to correct an unforseen and unintended consequence of the Former Spouses Act—the reopening of numerous divorce cases finalized before *McCarty. See Redus v. Redus*, 852 S.W.2d 94, 96 (Tex.App.—Austin 1993, writ denied). The purpose of the 1990 amendment is clearly set forth:

The committee is concerned because some state courts have been less than faithful in their adherence to the spirit of the law [USFSPA]. The reopening of divorce cases finalized before the Supreme Court's decision in *McCarty v. McCarty* that did not divide retired pay continues to be a significant problem. Years after final divorce decrees have been issued, some state courts, particularly those in California, have reopened cases (through partition actions or otherwise) to award a share of retired pay. Although congress has twice stated in report language that this result was not intended, the practice continues unabated. Such action is inconsistent with the notion that a *final decree of divorce represents a final disposition of the marital estate.*

H.R.Rep. No. 665, 101st Cong., 2d Sess. 279, *reprinted in* 1990 U.S.Code Cong. & Admin.News 2931, 3005 (emphasis added). The 1990 amendment to the Former Spouses Act

is intended to grant repose to pre–1981 divorce decrees that failed to award military retirement benefits. *Redus*, 852 S.W.2d at 96.

In the present case, it is undisputed that the parties marriage was ended by a final decree of divorce issued before June 25, 1981. The parties disagree about whether the 1970 divorce decree "treated" Norbert's military retirement benefits. Norbert argues that the 1970 divorce decree did not treat his military retirement benefits and thus falls within the parameters of amended 10 U.S.C. § 1408(c)(1) barring Alene from bringing an action to partition those benefits. Alene counters that the 1970 divorce decree in fact did treat the military retirement in the residuary clause and thus the judgment in the current action falls outside the scope of the 1990 amendment.

■ It is undisputed that the 1970 divorce decree did not expressly mention Norbert Buys' military retirement benefits. The property settlement agreement incident to the divorce did contain the following residuary clause:

All of the other properties, financial assets and belongings of the parties hereto, whether separate or community, not specifically set aside to the Defendant (Norbert Buys) under Paragraph I. above shall be and is hereby specifically set apart, assigned, given, granted and conveyed to Plaintiff (Alene Buys) as separate property of the Plaintiff herein and the Defendant herein expressly releases assigns, gives, grants and conveys to the plaintiff herein all the Defendant's right title and interest in and to the property hereby set apart to Plaintiff that he now has or may have, free of waiving any and all claims at law or in equity that he now has or may have, in whole or in part to such property.

The issue is whether this clause "treats" Norbert's military retired pay.

Although this precise issue has not been previously decided, this court has addressed the effectiveness of general residuary clauses

in dividing military retirement benefits in *Yeo v. Yeo*, 581 S.W.2d 734 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.) and *Dunn v. Dunn*, 703 S.W.2d 317 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). The facts in *Yeo* are similar to our facts. The parties were divorced and incident to their divorce they entered into a property settlement agreement which did not mention the husband's military retirement benefits but which did contain a residuary clause. The husband retired from the military and began receiving his benefits and the wife filed a partition suit seeking a portion of the military retirement benefits. The husband attempted to avoid the partition suit by claiming that the military retirement benefits had been divided in the residuary clause and awarded to him. After reviewing several cases discussing the effect of residuary clauses on unmentioned marital property, the court came to the following conclusion:

> The essential thrust of these and other cases involving broad and comprehensive release or residuary clauses in property settlement agreements is that, unless the property involved is specifically identified and described, such clauses are not effective to transfer or release property owned by the so-called "releasor." We have concluded, therefore, that the divorce decree, in the present case, which incorporated by reference the property settlement agreement, does not constitute an adjudication or disposition of the community property interest in the military retirement benefits.

*Yeo*, 581 S.W.2d at 739.

In *Dunn*, this court was faced with a similar claim as to whether a divorce decree which did not specifically mention military retirement benefits divided them in a residuary clause. Again, following *Yeo*, we concluded that a residuary clause did not divide military retirement benefits. *Dunn*, 703 S.W.2d at 319.

Other courts addressing this issue have agreed that a residuary clause is not sufficient to divide retirement benefits. *See, e.g., Ewing v. Ewing*, 739 S.W.2d 470 (Tex.App.—Corpus Christi 1987, no writ); *Dessommes v. Dessommes*, 505 S.W.2d 673 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.). A clause which merely expresses the general intent to divide community property in the settlement is not sufficient to infer an implicit award of all of one party's military retirement benefits acquired during marriage to the non-military spouse. *See, e.g., Ewing*, 739 S.W.2d at 473; *Dunn*, 703 S.W.2d at 319; *Yeo*, 581 S.W.2d at 739.

█ We recognize that other courts of appeals have held that general residuary clauses may implicitly divide retirement benefits. *See, e.g., Tharp v. Tharp*, 772 S.W.2d 467 (Tex.App.—Dallas 1989, no writ); *Carreon v. Morales*, 698 S.W.2d 241 (Tex.App.—El Paso 1985, no writ); *Jacobs v. Cude*, 641 S.W.2d 258 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). However, when facing a split in authority among the various courts of appeals we follow our own precedent in holding that general residuary clauses do not divide military retirement benefits. It should also be noted that none of the contrary cases involved military retirement pay.

█ The failure to treat the military retirement benefits in the 1970 divorce decree brings this judgment within the ambit of the 1990 amendment to the Former Spouses Protection Act; therefore, the federal act prohibits the trial court from making any award of Norbert's military retired pay to Alene. We hold that the 1970 divorce decree did not treat the military retirement pay. We also hold that the trial court was without jurisdiction, pursuant to 10 U.S.C. § 1408(c)(1), to award Alene a portion of Norbert's military retirement pay.

We sustain Norbert's second point of error and we overrule Alene's first point of error.

### Civil Service Retirement Benefits

In his third cross-point of error, Norbert argues that the trial court erred in awarding Alene a portion of his civil service retirement pay because applicable federal law prohibits state courts form making such awards.

██ Under Texas law, vested interests in retirement benefits accrued during marriage are community property subject to division or partition on divorce. *Herring v. Blakeley,* 385 S.W.2d 843 (Tex.1965); *Thibodeaux v. Thibodeaux,* 546 S.W.2d 662 (Tex. Civ.App.—Beaumont 1977, no writ). Civil service retirement pay is treated as community property subject to division or partition in a divorce proceeding. *See, e.g., Bonar v. Bonar,* 614 S.W.2d 472 (Tex.Civ.App.—El Paso 1981, writ ref'd n.r.e.); *Cowan v. Plsek,* 592 S.W.2d 422 (Tex.Civ.App.—Waco 1979, no writ). In cases where the vested civil service retirement benefits are not partitioned in the divorce decree, the husband and wife become tenants in common and the retirement benefits are subject to division in a subsequent suit for partition. *Boniface v. Boniface,* 656 S.W.2d 131, 133 (Tex.App.—Austin 1983, no writ).

██ Civil service retirement benefits are controlled by 5 U.S.C. § 8346. Prior to 1978, section 8346 provided that benefits payable under civil service retirement were "not assignable, either in law or in equity, or subject to execution, levy, attachment, garnishment, or other legal process." This statute constituted a bar to the Civil Service Commission being subject to legal processes for purposes of making benefit payments to anyone other than the retiree. However, no court has ever held that the provision prohibited state courts from classifying civil service retirement benefits as community property subject to division upon divorce. *Boniface,* 656 S.W.2d at 133. The practical effect of this provision prior to 1978 was to force the former spouse to seek payment of her share of the civil service retirement pay from the recipient and not directly from the Civil Service Commission. *Id.*

In 1978, Congress amended this statute in order to permit direct payment of civil service retirement benefits to persons other than the retiree to the extent provided for in "any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation." 5 U.S.C. § 8345(j)(1).

The importance of this amendment was clearly explained in *Boniface,* as follows:

> In other words, the 1978 amendments did not affect the nature of civil service retirement benefits accrued and vested during marriage. Such benefits were and are community property under the law of this state both before and after the amendments. But it was only after the adoption of these amendments that federal authorities could be bound by state court decisions in their future payment of benefits pursuant to the division of property incident to or arising out of a divorce.

*Boniface,* 656 S.W.2d at 134.

The court in *Boniface* rejected the same argument made by Norbert in the present case, that pre–1978 federal law prohibited division of civil service retirement benefits upon divorce. The court makes clear that the pre–1978 version did not prohibit state trial court's from characterizing civil service retirement as community property and dividing it upon divorce. The act did prohibit the Civil Service Commission from making direct payments to the persons other than the retired civil servant. The 1978 amendment provided for direct payment pursuant to court order of civil service retirement benefits to persons other than the retired civil servant. *Id.*

██ In the present case, the 1970 divorce decree failed to divide Norbert's civil service retirement benefits. Therefore, Alene and Norbert were tenants in common of the civil service retirement benefits. *Bonar,* 614 S.W.2d at 473. As such the civil service retirement benefits were subject to division in a suit for partition at a later date. The trial court in this case divided those benefits and awarded Alene 23.86% which represented half of the retirement benefits which were community property. The judgment also ordered that the Office of Personnel Management would directly pay Alene her share of

those benefits. Since an earlier divorce decree failed to address the civil service retirement benefits, the judgment at issue is a court order incident to and arising out of an earlier court proceeding, and thus is a court order within the meaning of the 1978 amendments to the Code. *Boniface,* 656 S.W.2d at 134–35. The trial court was within its jurisdiction to divide the benefits in question and order that Alene's share be paid directly to her by the federal government.

We overrule Norbert's third cross-point of error.

### Valuation of Civil Service Award

In his fourth and fifth cross-points of error, Norbert argues that the trial court erred in failing to base its award on the amount of the retirement which would have been paid on the date of divorce rather than on the date of retirement.

■ It is undisputed that under Texas law, community property is to be valued and apportioned to the spouses based on the value of the community's interest at the time of divorce. *Grier v. Grier,* 731 S.W.2d 931, 932 (Tex.1987); *Berry v. Berry,* 647 S.W.2d 945, 947 (Tex.1983). The military spouse has the burden of proof to show what the value of the military retirement would have been as of the date of divorce. *Berry,* 647 S.W.2d at 947; *Dessommes v. Dessommes,* 505 S.W.2d 673, 679 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.). In this case, Norbert failed to offer any evidence on what the value of the military retirement would have been on the date of divorce.

■ The trial court made findings of fact concerning the percentage of the retirement benefits which were community property and the value of those benefits. Norbert failed to assign any points of error challenging the trial court's findings of fact concerning the time, percentages and valuation of the civil service retirement benefits. Findings of fact not challenged by a point of error are binding on appeal. *Burrows v. Miller,* 797 S.W.2d 358, 360–61 (Tex.App.—Tyler 1990,

no writ); *Cortez v. Cortez,* 457 S.W.2d 131, 133 (Tex.Civ.App.—San Antonio 1970, no writ). The trial court's findings of fact relating to the apportionment and valuation of Alene's award of civil service retirement benefits which were community property are binding on this court.

Norbert Buys' fifth cross-point is overruled.

### Attorney's Fees

Alene Buys brings two other points of error. In her second point of error, Alene complains that the trial court abused its discretion in failing to award her attorneys' fees.

■ This was a declaratory judgment action brought pursuant to Tex.Civ.Prac. & Rem.Code § 37.001 et seq. An award of attorneys' fees is governed by Tex.Civ.Prac. & Rem.Code § 37.009 which provides that "[i]n any proceeding under this chapter, the court may award costs and reasonable and necessary attorneys' fees as are equitable and just." The granting or denial of attorneys' fees is left to the sound discretion of the trial court and will not be reversed absent a clear showing of abuse of discretion. *See Oake v. Collin County,* 692 S.W.2d 454, 455 (Tex.1985); *Baldwin v. Barbon Corp.,* 773 S.W.2d 681, 686 (Tex.App.—San Antonio 1989, writ denied). No such showing has been made by Alene in this case.

■ Alene Buys also argues that she is entitled to attorneys' fees pursuant to Tex. Civ.Prac. & Rem.Code § 38.001 which permits recovery of attorneys' fees in suits based upon written contracts. However Alene did not succeed on her claim for breach of contract. The trial court finding, which was affirmed by this court, is that the 1970 divorce decree did not divide the military retirement benefits, the parties held the retirement benefits subject to a suit for partition. The trial court's judgment in this case was in effect a partition of previously undivided community property held jointly by the parties. As Alene did not succeed on her

claim of breach of contract, she is not automatically entitled to attorneys' fees.

Therefore we overrule Alene's second point of error.

### Pre-judgment Interest

In her third point of error, Alene Buys argues that the trial court erred in failing to award her pre-judgment interest. According to Alene, she is entitled to pre-judgment interest because she was entitled to an ascertainable sum of money determined to have been due and payable at a date certain prior to judgment. *Anderson v. Anderson*, 707 S.W.2d 166, 170 (Tex.App.—Corpus Christi, 1986, writ ref'd n.r.e.).

In the present case, Alene was not entitled to an ascertainable sum of money to have been due and payable at a date certain prior to the judgment. As previously discussed, the 1970 divorce decree and property settlement agreement incident to it did not divide the civil service retirement benefits. Those benefits have been held by both parties jointly until partition. Those amounts did not become due and payable until entry of the judgment in this case. The point is best illustrated by reviewing *Anderson*, 707 S.W.2d 166.

In *Anderson*, the parties' original divorce decree clearly divided the community share of the husband's military retirement pay and awarded the wife a proportionate share. Mr. Anderson was retired from the military in 1981 but did not pay his former spouse her court ordered share of the retirement pay. Suit was brought and ultimately decided in Mrs. Anderson's favor. The court concluded that pursuant to the 1971 divorce decree dividing the retirement benefits between the parties, Mrs. Anderson was owed an ascertainable amount due on December 1981, the date Mr. Anderson was entitled to begin

receiving military retirement benefits. *Id.* In the present case, the trial court correctly refused to award pre-judgment interest because, until entry of the judgment in the present case, Alene Buys owned an undivided interest in the civil service retirement benefits. Thus there was no amount due and payable to Alene Buys prior to entry of judgment.

Alene Buys third point of error is overruled.

This court reverses that portion of the trial court's judgment which awards Alene Buys military retirement benefits. This court affirms the remainder of the trial court's judgment.

**DISSENTING OPINION ON DENIAL OF
MOTION FOR REHEARING**

DUNCAN, Justice, dissenting.

Had Mrs. Buys sued in any of the counties encompassed by the Dallas, El Paso, Houston, or Tyler Court of Appeals districts, she would have recovered her community property interest in her former husband's military retirement benefits. Unfortunately, however, Mrs. Buys lives in San Antonio, and it is here that she sued for partition. And, in this district, a residuary clause disposing of "all property," including "financial assets," does not effect a division of military retirement benefits.[1] In my view, prior precedent of this court does not require us to depart from the majority rule, and prior precedent of our supreme court requires that we follow it and give effect to the clear and unambiguous residuary clause in the Buys' divorce decree. I therefore dissent.

First, let us be clear as to the terms of the residuary clause in the Buys' divorce decree: "All of the other properties, financial assets, or belongings ... not specifically set aside to [Mr. Buys] ... shall be and is [sic] hereby

---

1. The majority opinion, by its terms, applies only to military retirement benefits; the opinion leaves open whether similar residuary clauses effect a disposition of other types of community property. If limited to military retirement benefits, the majority's rule unfairly penalizes spouses of military personnel; if expanded to include all types of community property, the majority's rule will require a new division each time a new item of community property is discovered.

specifically ... granted to [Mrs. Buys] as separate property...." Despite the fact that the right to military retirement benefits is unquestionably a "financial asset," the majority holds that this clause does not effect a division of these benefits. In support of its decision, the majority states that it is "follow[ing] our own precedent," referring to *Yeo v. Yeo*, 581 S.W.2d 734 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.), and *Dunn v. Dunn*, 703 S.W.2d 317 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). In my view, neither *Yeo* nor *Dunn* requires the majority's decision.

The Yeos divorced in 1964. At that time, "the state of the law as to one spouse's right in the other spouse's military retirement benefits was nebulous and unsettled even among lawyers." *Yeo*, 581 S.W.2d at 737. However, in 1970, the supreme court held that all military retirement benefits accruing during marriage are community property and, when these benefits are not provided for in the divorce decree, the former spouses become tenants in common or joint owners of the benefits. *Busby v. Busby*, 457 S.W.2d 551, 554 (Tex.1970). Neither the Yeos' divorce decree nor their property settlement agreement mentioned the military retirement benefits; accordingly, Mrs. Yeo sued for partition. The trial court granted a summary judgment to Mr. Yeo, and Mrs. Yeo appealed. On appeal, the issue before this court was whether the residuary clause in the Yeos' property settlement agreement disposed of the military retirement benefits. *Yeo*, 581 S.W.2d at 737.

The Yeo residuary clause provided that Mrs. Yeo "released, remised and quitclaimed" to her former husband "all claims to, upon and against all his property and estate", including "all other property of whatever nature, separate or community, in his possession or claimed by him...." *Id.* This court held that Mrs. Yeo's interest in the military retirement benefits was not a "claim," and the benefits were not "property in [Mr. Yeo's] possession"; therefore, the court reversed and remanded the case for trial. *Id.* at 737, 740. The purpose of a trial,

of course, was to partition the military retirement benefits.

The *Yeo* Court drew support for its decision from three cases—*Dessommes v. Dessommes*, 505 S.W.2d 673 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.), *Thompson v. Thompson*, 500 S.W.2d 203 (Tex.Civ.App.—Dallas 1973, no writ), and *Simmons v. Simmons*, 272 S.W.2d 913 (Tex.Civ.App.—Fort Worth 1954, no writ). *Yeo*, 581 S.W.2d at 738. In *Dessommes*, the Dallas Court of Appeals ruled that a "release of claims" clause does not effect a disposition of property, because " 'possession' could not properly be interpreted as including such intangible contract rights as those there involved." *Id.* The clauses at issue in *Thompson* and *Simmons* were also similar to the Yeos' clause in that they effected a release of one spouse's rights in the other spouse's property. In both cases, the Dallas and Fort Worth Courts of Appeals held this type of clause does not effect a disposition of community property, which by definition belongs to both spouses. *See Yeo*, 581 S.W.2d at 738–39.

The majority bases its decision upon the *Yeo* Court's statement that "[t]he essential thrust of these and other cases involving broad and comprehensive release or residuary clauses in property settlement agreements is that, unless the property involved in specifically identified and described, *such clauses* are not effective to transfer or release property owned by the so-called 'releasor.' " *Id.* at 739 (emphasis added). However, in light of the fact that the clauses involved in *Yeo* and the cases upon which it relied were either a "release of claims" clause or a "release of rights in the other spouse's property" clause, "such clauses" must, in my view, be read to refer to these types of clauses only. With this statement of the law I have no disagreement. My disagreement arises out of the majority's overly broad interpretation of this statement—completely divorced from its context.

The majority also relies upon *Dunn v. Dunn*, 703 S.W.2d 317 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). The Dunns' di-

vorce decree awarded each spouse one-half of the proceeds of a horse and "any and all other property" in that spouse's possession and control at the time of the divorce. *Dunn,* 703 S.W.2d at 318. One issue before the court was whether this clause disposed of the military retirement benefits claimed by Mr. Dunn. Following *Yeo,* and again relying upon *Dessommes,* this court ruled that " 'possession' could not properly be interpreted as including such intangible contract rights as future military retirement benefits." *Id.* at 319. Accordingly, Mr. Dunn's "right ... to claim his retirement benefits is the type of 'intangible right' contemplated in *Yeo* and *Dessommes* and the trial court therefore properly characterized it as falling outside of the residuary clause." *Id.* at 320. *Dunn,* therefore, like *Yeo,* stands for the proposition that a clause effecting a division of property in one spouse's possession at divorce does not reach the right to future military retirement benefits. To the same effect is *Ewing v. Ewing,* 739 S.W.2d 470 (Tex.App.—Corpus Christi 1987, no writ), also relied upon by the majority.[2]

In my view, therefore, neither *Yeo* nor *Dunn* constrains our analysis in this case, because neither involved a residuary clause purporting to divide all property not specified in the divorce decree or the property settlement agreement regardless of "possession and control," as does the residuary clause involved in this case. In interpreting the clause before us, therefore, we are not bound by prior precedent of this court. We also do not write in a vacuum. We should be

guided by decisions involving similar clauses by other courts of appeals and, more generally, by our supreme court.

The supreme court has made clear that a judgment is to be construed like any other written instrument. *Permian Oil Co. v. Smith,* 129 Tex. 413, 449, 107 S.W.2d 564, 567 (1937). Since the same rules of interpretation apply, judgments, like contracts, are to be construed as a whole, harmonizing and giving effect to each part. *Lone Star Cement Corp. v. Fair,* 467 S.W.2d 402, 405 (Tex.1971). Employing these familiar rules, the other courts of appeals addressing the issue before us have uniformly given effect to the plain meaning of similar residuary clauses. *See Tharp v. Tharp,* 772 S.W.2d 467 (Tex.App.—Dallas 1989, no writ);[3] *Jacobs v. Cude,* 641 S.W.2d 258 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.);[4] *Bloom v. Bloom,* 604 S.W.2d 393 (Tex.Civ.App.—Tyler 1980, no writ).[5] The application of the rules in this context was succinctly stated in *Jacobs:*

> By its very nature, a residuary clause encompasses those things not specified in the decree but included in the community property under the jurisdiction of the court. Otherwise, a party to an earlier judgment would be able to collaterally "chip away" at the ownership status of property already adjudicated by a court, and the entire purpose of the residuary clause would be destroyed.

*Jacobs,* 641 S.W.2d at 260.

In this case, the parties' intent was expressly stated—to reach "a complete settle-

---

**2.** In a case involving a clause setting aside the parties' "community property" to the spouse with "possession and control" at the date of divorce, the El Paso Court of Appeals gave effect to the parties' intent to dispose of all of their community property and declined to following the reasoning in *Dessommes. See Carreon v. Morales,* 698 S.W.2d 241 (Tex.App.—El Paso 1985, no writ). Presumably, therefore, the El Paso Court of Appeals would also give effect to a clause awarding property and financial assets to one or the other spouse without regard to "possession and control."

**3.** *Tharp,* 772 S.W.2d at 468–69 (residuary clause awarding "the remainder of the marital estate"

to ex-husband effected disposition of retirement benefits).

**4.** *Jacobs,* 641 S.W.2d at 259–60 (residuary clause awarding former husband "all community property not mentioned above" effected disposition of retirement benefits).

**5.** *Bloom,* 604 S.W.2d at 394 (where retirement benefits were in former's husband's name, and residuary clause provided that property not specifically divided but in the name of one spouse at the time of divorce became that spouse's separate property, husband entitled to retirement benefits).

ment of their respective property and marital rights" "either now vested or to be vested." To accomplish this intent, the residuary clause plainly and unambiguously awards to Mrs. Buys all property, including all financial assets, not specifically set aside to Mr. Buys. Indisputably, the right to military retirement benefits was not expressly set aside to Mr. Buys in the decree. Just as clearly, the right to military benefits is a financial asset. Under the clear and unambiguous terms of the residuary clause, therefore, the right to military benefits was awarded to Mrs. Buys. The benefits were thus "treat[ed]" in the Buys' divorce decree and subject to partition under and in accordance with the Uniformed Services Former Spouses' Protection Act (codified, as amended, at 10 U.S.C. § 1408(c)(1) (West Supp.1993)) and *Cameron v. Cameron,* 641 S.W.2d 210 (Tex.1982).

Under unequivocal supreme court precedent, we are required to give effect to the parties' intent as expressed in their clear and unambiguous agreement. The majority has failed to do so and has instead ignored the parties' statement of their intent at the time of their divorce and completely eviscerated the expression of that intent in the residuary clause. For these reasons, and because I believe Mrs. Buys was entitled to attorney's fees and prejudgment interest, I dissent.